Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
Phone: (503) 917-4409
Fax: (916) 857-6902
E-mail: rhacke@pji.org

Attorneys for Plaintiff
NADEZHDA BABIY

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| NADEZHDA BABIY, An Individual,<br><br>Plaintiff,<br><br>v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity; and DOES 1 THROUGH 50, Inclusive,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff NADEZHDA BABIY hereby alleges as follows:

## **PARTIES**

1.      Plaintiff worked as a Patient Access Specialist for Defendant OREGON HEALTH & SCIENCE UNIVERSITY ("OHSU") for more than six (6) years, from June 2015 until December 2, 2021.  She worked fully remotely the last three (3) years of her employment with OHSU.

2.     Plaintiff is also, and at all times relevant herein was, a practicing Christian and thus a member of a class of employees protected under Title VII of the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a), Plaintiff sought from Defendant OHSU a religious exception from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate"). Plaintiff objected to receiving a COVID-19 vaccine because the manufacturers of all such vaccines then available in the United States at or near the time of the events giving rise to this case used cells from aborted babies in the production of the vaccines.  Plaintiff holds, and at all times herein held, a sincere religious conviction that she cannot benefit from abortion because to do so would be to condone and perpetuate the murder of the unborn, which she believes, and at all times herein believed, the Bible prohibits

3.     Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

4.     Defendant OHSU is also openly pro-abortion, and its Vaccine Exemption Review Committee (the "VERC") openly expressed hostility toward certain religious of views of employees who sought religious exemptions from the COVID-19 vaccination requirement, including those of Plaintiff, declaring that those beliefs were unworthy of a religious exception.

5.     The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein

referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged. The DOES include members of the VERC, who made the decision to deny Plaintiff a religious exemption in violation of her constitutional rights. Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

6.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

7.      This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the constitution and laws of the United States.

8.      This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343 and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

9.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

10.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents, employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

11.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

12.      OHSU is Oregon's only public medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors,

nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions.

13.     OHSU is also openly in favor of abortion, which ends an unborn child's life *in utero*.  In fact, in response to the Supreme Court's overturning of *Roe v. Wade*, the 1972 decision that made abortion legal nationwide, OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a true and accurate copy of said press release].[1]

14.     In August 2021, roughly 18 months after the COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, enacted the Vaccine Mandate, which required healthcare workers employed in Oregon to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.

15.     The Mandate let healthcare workers to seek, and the hospitals, clinics, and other entities who employed them grant, religious exemptions from the vaccination requirement.  Or. Admin. R. 333-019-1010(3)-(4).

16.     The Vaccine Mandate, which has since been repealed,[2] also expressly stated that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state***

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and _inclusive_ place*** to learn, ***_work_*** and receive care for all people regardless of gender, race, ***_religion_*** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

[2] The OHA repealed the Vaccine Mandate in its entirety on June 30, 2023.  *See* http://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/9549761 [last viewed on Oct. 25, 2023].

*law equivalents*, for individuals **_unable_** to be vaccinated due to … a sincerely held religious belief."  Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

17.    In accordance with the Vaccine Mandate, OHSU required its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.  However, OHSU warned Plaintiff and other employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved."  *See* Attached **Exhibit "B"** [a true and correct e-mail from OHSU to employees company-wide in which OHSU declares, "Narrow exceptions process will help keep OHSU and the community safe"].

18.    Plaintiff is, and at all times relevant herein was, a Patient Access Specialist who worked for OHSU for more than six years, beginning in June 2015. Her duties included creating estimates for patients' services based on the patients' available insurance benefits and working with insurance companies to ensure that the costs of patients' services were covered.

19.    For the entirety of the three years preceding OHSU's termination of her employment, Plaintiff worked fully remotely.

20.    Plaintiff was qualified to serve in her position and was an exemplary employee throughout her tenure at OHSU.

21.    Plaintiff is also, and at all times relevant herein was, a practicing Christian who opposes abortion on religious grounds, as she believes participation in abortion is a grave sin, and to do so would violate her conscience and desecrate her body.  *See* **Exhibit "C"** [a copy of Plaintiff's religious exemption request].

22.    When researching the COVID-19 vaccines currently available in the United States at the time the OHA issued its Vaccine Mandate, Plaintiff discovered that the vaccines' manufacturers used cells from aborted babies either in the testing and development of the vaccines or in the vaccines themselves.  *See* Ex. "C."

23.     Based on prayer and Bible study, Plaintiff determined that she was
unable, in accordance with Christian principles, to take a COVID-19 vaccine.
Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), on or about
September 7, 2021, Plaintiff submitted a religious exception request to OHSU.  *See*
Ex. "C."  Plaintiff timely submitted her request before OHSU's imposed deadline
of September 20, 2021.

24.     In her religious exception request, Plaintiff provided multiple reasons
why her faith prohibited her from taking a COVID-19 vaccine.  *See* Ex. "C."
Plaintiff extensively backed up her assertions with quotations from Scripture.  *Id.*

25.     Nonetheless, OHSU notified Plaintiff via e-mail that the VERC had
rejected her religious exception request.  A copy of OHSU's notice of rejection is
attached hereto as **Exhibit "D."**

26.     In denying Plaintiff's religious exception request, the VERC made no
assertion that OHSU could not accommodate her sincerely held religious beliefs
due to undue hardship.  *See* Ex. "D."  Rather, the VERC deemed several religious
beliefs to be unworthy of accommodation.

27.     Chief among those beliefs was "an objection to the vaccine on the
basis of fetal cell concerns, in the vaccines or in testing and development."  *See*
Ex. "D."  Plaintiff held such a religious objection.  *See* Ex. "C."

28.     The VERC's rejection e-mail also stated in boldfaced letters, "OHSU
values you and hopes you will consider getting vaccinated in order to remain an
OHSU member."  *See* Ex. "D."  This statement, at best, ignores or demonstrates an
extreme lack of sensitivity toward the religious convictions that moved Plaintiff to
seek a religious exception in the first place – convictions that no true religious
adherent, including Plaintiff, could abandon, even if it meant keeping her job.  At
worst, the statement demonstrates hostility toward beliefs like Plaintiff's by

pressuring them to choose between their sincerely held religious convictions and the promise of steady employment – a choice Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make.

29.    Attached hereto as **Exhibit "E"** is a true and accurate copy of a document that OHSU circulated to its employees essentially declaring that religious exception requests rooted in concerns about manufacturers' use of cells from aborted babies would be automatically rejected.  In the document, OHSU effectively asserts that because several high-profile religious organizations issued public statements approving the use of COVID-19 vaccines despite their connection to abortion, OHSU employees who belonged to those organizations' faiths had no reason not to get vaccinated.

30.    Not only did OHSU fail to engage in a good-faith, interactive exploration of potential accommodations that would have let Plaintiff continue working despite being unvaccinated against COVID-19, as Title VII requires, OHSU refused to even consider engaging in such an interactive exploration.

31.    Such accommodations were available, including but not limited to allowing Plaintiff to continue working remotely.

32.    Had OHSU provided such accommodations, Plaintiff would have happily submitted to them as a condition of maintaining her employment.

33.    Despite the availability of accommodations that would have allowed Plaintiff to continue working, OHSU offered no accommodations to Plaintiff.

34.    Because Plaintiff was unable to receive a COVID-19 vaccine in accordance with her sincere religious convictions, OHSU placed Plaintiff on unpaid leave on or about October 19, 2021.

35.    OHSU ultimately fired Plaintiff on or about December 2, 2021.

36.    As of this writing, Plaintiff has found other employment.  However, she is earning less money per hour and does not receive any health insurance or retirement benefits, as she did at OHSU, which paid her roughly $4,100 per month.

37.    Plaintiff has also had to spend more than $1,200 per month to cover the cost of health insurance for herself and her children – one of whom has a serious medical condition that requires expensive medication – and has paid out approximately $15,000 to date.

38.    Plaintiff has also suffered a great deal of emotional distress due to losing her job, filing complaints for religious discrimination, and seeking new employment. Losing medical insurance from OHSU, and having to search for new medical insurance and pay for it out of pocket, has compounded her distress.

39.    Attached hereto as **Exhibit "F"** is a true and correct copy of Plaintiff's right-to-sue letter from the Oregon's Bureau of Labor and Industries (BOLI).  The Court should note that BOLI found substantial evidence of discrimination on OHSU's part.

40.    Attached hereto as **Exhibit "G"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in Plaintiff's right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that she has timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Violation of Title VII – Failure to Accommodate
### [42 U.S.C. § 2000e-2]
### Against Defendant OHSU

41.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

42.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

43.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

44.    Defendant OHSU is an employer under Title VII.

45.    The term "religion," for purposes of Title VII, "includes **_all_** aspects of religious observance and practice, **_as well as belief_** …" 42 U.S.C. § 2000e(j) (emphasis added).

46.    As a practitioner of Christianity, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

47.    Plaintiff sincerely believes that the Bible prohibits her from receiving COVID-19 vaccines due to the vaccine manufacturers' use of cells from aborted babies in the production of the vaccines.  *See* Ex. "C."

48.    Plaintiff's bona fide religious belief conflicted with her employment-related duty to receive a COVID-19 vaccine in accordance with the Governor's Vaccine Mandate.  *See* Ex. "C."

49.    Plaintiff informed her employer, Defendant OHSU, of the conflict between her religious beliefs and her employment-related duties.  *See* Ex. "C."

50.    Defendant OHSU subjected Plaintiff to discriminatory treatment – first by declaring her beliefs unworthy of a religious exception, then by placing her on unpaid leave on or about October 18, 2021, and finally by firing her on December 2, 2021.

51.    Defendant OHSU made no attempt to accommodate Plaintiff's bona fide religious belief, as Title VII requires.

52.    Defendant OHSU made no assertion to Plaintiff that OHSU would incur undue hardship by accommodating Plaintiff's beliefs.  OHSU simply

threatened Plaintiff with termination of employment if she would not get vaccinated, thereby coercing her to choose between abiding by her sincerely held religious beliefs and remaining employed.

53.    Defendant OHSU could, and should, have easily accommodated Plaintiff's sincere religious beliefs by allowing Plaintiff to continue working remotely.  OHSU offered no accommodations to Plaintiff, opting to take adverse employment actions against her instead.

54.    Religious discrimination is truly what motivated Defendant OHSU to get rid of Plaintiff, any assertion by OHSU to the contrary notwithstanding.

55.    Based on the foregoing, Defendant OHSU has discriminated against Plaintiff in violation of Title VII.

<div align="center">

**SECOND CAUSE OF ACTION:**
**Violation of Title VII – Religious Discrimination**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

</div>

56.    Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

57.    "To establish a prima facie case of religious discrimination, must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) '*either* that similarly situated individuals outside her protected class were treated differently, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008) (emphasis in the original) [quoting *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743-44 (9th Cir. 2004)].

58.    As a Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

59.     Plaintiff was qualified for her position as a Patient Assistance Specialist.

60.     Defendant OHSU subjected Plaintiff to multiple adverse employment actions – first by threatening to place her on unpaid leave and/or terminate her employment if she did not receive a COVID-19 vaccine, then by placing her on unpaid leave on or about October 18, 2021, and ultimately by firing her on December 2, 2021.

61.     Defendant OHSU treated similarly situated individuals outside Plaintiff's protected class differently: Implicit in OHSU's statement to employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved" is that **_some_** exceptions would be approved.  *See* Ex. "B" [OHSU's declaration that "(n)arrow exceptions process will help keep OHSU and the community safe"].  The fact that OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – implies that only those individuals who held the right beliefs would receive accommodations.

62.     At the very least, the facts that (1) OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – and (2) denied Plaintiff a religious exception because she had those beliefs are circumstances that give rise to an inference of religious discrimination.

63.     Based on the foregoing, Defendant OHSU has committed religious discrimination against Plaintiffs in violation of Title VII.

<div align="center">

**THIRD CAUSE OF ACTION:**
**Violation of Constitutionally Protected Freedom of Religion**
**[U.S. Const. amend. I; 42 U.S.C. § 1983]**
**Against DOES 1-50**

</div>

64.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

65.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

66.    Under 42 U.S.C. § 1983, state actors like the VERC's members – whose identities have yet to be ascertained – forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights: "[A] state official who violates federal law '*is in that case stripped of his official or representative character and is subjected in his person to the consequences* of his individual conduct.'" *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (emphasis added).

67.    The Free Exercise Clause of the U.S. Constitution's First Amendment, made applicable to states via the Fourteenth Amendment, prohibits prohibits state governments from depriving individuals of their religious freedom.

68.    "The Free Exercise Clause protects against government hostility that is masked as well as overt." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, the Board Defendants expressed overt hostility toward the religious beliefs of certain OHSU employees, including and especially Plaintiff, by declaring which religious beliefs were worthy of religious exceptions from the Governor's Vaccine Mandate and which religious beliefs were not.

69.    Furthermore, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious belief, *the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain*." *Sch. Dist. of Abington Twp. v.*

*Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).  Acting under color of state law, the VERC effectively declared that because multiple high-profile religious organizations had expressed approval of COVID-19 vaccines despite their connection to abortion, OHSU employees belonging to those organizations' faiths essentially had no excuse for not receiving a COVID-19 vaccine.  In so doing, the OHSU overstepped their constitutional bounds, pressuring Plaintiff to conform to the prevailing approved religion.

70.    Acting under color of state law, the members of the VERC – whose identities have yet to be ascertained – effectively penalized Plaintiff for adhering to her sincere, religiously-based objection to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiff.  The VERC's members forced Plaintiff to choose between the government-provided benefit of continued employment with OHSU and following her religious beliefs.  This, the U.S. Constitution prohibits.

71.    Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC's members could – and should – have reasonably accommodated Plaintiff's beliefs and allowed her to keep working.  The VERC's actions in declaring which religious beliefs were worthy of accommodation and in enforcing a discriminatory religious exception were not narrowly tailored and cannot survive strict scrutiny under the U.S. Constitution's First Amendment.

72.    Based on the foregoing, DOES 1-50, including the members of the VERC, have deprived Plaintiff of her constitutionally protected freedom of religion.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

## ON ALL CAUSES OF ACTION:

1.      For declaratory and injunctive relief against the members of the VERC, as stated *supra*;

2.      For economic damages in an amount according to proof at trial;

3.      For non-economic damages in an amount according to proof at trial;

4.      For punitive damages in an amount according to proof at trial;

5.      For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.      For such other and further relief as the Court may deem proper.


Dated: October 25, 2023                       PACIFIC JUSTICE INSTITUTE

                                              __/s/ *RAY D. HACKE*_____
                                              Ray D. Hacke
                                              Attorneys for Plaintiff
                                              NADEZHDA BABIY

# EXHIBIT "A"



Browse Stories

Awards and Accomplishments

Community

COVID-19

Education

Health Care

Labor Relations

Philanthropy

Research

Viewpoint

Share  Tweet  Share  Email  Print

# Abortion is essential health care

June 24, 2022    Portland, Oregon



*Content warning: In support of trauma-informed communications, please be aware that this message contains topics that may be activating for some community members. The Confidential Advocacy Program*  *can be reached 24/7 by calling 833-495-2277. Additional resources for OHSU members are available here* .

Every day at OHSU, thousands of dedicated researchers, clinicians, students and staff advance our focus of healing, teaching and discovery, to improve not just the lives of Oregonians, but of all those who interact with this institution. They do so with science as their guide and the belief that every individual should be able to make informed health care decisions for themselves, including whether or not to access abortion care.

History shows us that the impact of today's decision by the United States Supreme Court to roll back the protections of *Roe v. Wade* guarantees one thing: Abortion will become unsafe and less accessible for far too many people in this country. It should not be this way. We believe that access to health care of any kind, including abortion, should not be limited by location, resources, bias, prejudice or the absence of care.

Here at OHSU, we are resolute in our commitment to provide the full continuum of sexual and reproductive health care — including abortion — to all who seek it, and to educate the next generation of clinicians and advance groundbreaking research. As we face a post-*Roe* world, we acknowledge the increased responsibility we have, along with other providers in Oregon, to ensure people from out-of-state are able to access the critical care they need.

To the individuals who need this care, we stand with you. To the dedicated clinicians and advocates who work tirelessly to provide and advance abortion care, we stand with you. OHSU is committed to doing everything we can to support and advocate for you and for equitable access to comprehensive reproductive services for all people.

*OHSU is committed to ensuring a respectful, welcoming and inclusive place to learn, work and receive care for all people regardless of gender, race, religion and sexual orientation. Our position on this issue is based on our obligation to improve the health and well-being of Oregonians and beyond, not on politics. In taking a position on any issue, OHSU acknowledges that some within the community may disagree. We encourage respectful conversation and feedback so that we may all better understand one another. Only together can we fulfill our mission and stimulate the spirit of inquiry, initiative and cooperation among students, faculty and staff.*

| | |
|---|---|
|  Previous Story<br>OHSU statement on gun violence, public safety | Next Story<br>PUBLIC NOTICE: Northwest Commission on Colleges and Universities to conduct comprehensive evaluation of OHSU on Oct. 24-26, 2022  |

## Media Contact

OHSU Communications

503 494-8231 ☎

Email OHSU ✉

## Related

 OHSU's position is steadfast: Abortion is health care

# EXHIBIT "B"

**Exhibit 3**

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Connie Seeley <now@ohsu.edu> |
| **Sent:** | Thursday, September 30, 2021 6:13 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Sept. 30 update |

OHSU**NOW**

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ፡ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comúniquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*



Share your experiences with the **Covington Hotline**

# Today's highlights

- **All OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18.** Today, we want to reiterate why this is so important and why we have narrow criteria for approving exception requests.
- **The more the merrier: Occupational Health can provide your COVID-19 booster.** No need to try OHSU pharmacies.
- **Automated Box content copy starts tomorrow, Oct. 1.** Do not access or use the From_Box folder in OneDrive until you are notified by ITG that the file migration is complete.
- **Are you experiencing compassion fatigue?** A powerful message from OHSU's Dr. George Keepers.
- **Only electronic badge requests accepted Oct. 4:** All requests must also be approved by a manager/OHSU sponsor.
- **Inbound FedEx shipments have been experiencing substantial delays due to national and worldwide labor shortages.** Please account for these delays when you place your orders.

# Narrow exceptions process will help keep OHSU and our community safe

As you know, all OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18. Across OHSU's more than 22,000 members, some of you have requested an exception for religious or medical reasons.

On Sept. 22, OHSU shared its narrow criteria for approving exception requests, and some of you have asked – why is this so narrow? OHSU has a responsibility to our members, our patients and our community to keep everyone as safe as possible. Vaccination against COVID-19 is an important tool in creating this safe environment.

There are valid reasons that a person may not be able to get vaccinated, but OHSU, and many of our peers, are using narrow criteria so we can ensure that the lens applied is truly a medical or religious one. In preliminary reviews, **OHSU's exception review panel expects that very few of the submitted requests for religious exceptions will be approved**.

This is in part because social, political or economic philosophies or personal preferences are not considered to be religious beliefs, and will not qualify a member for a religious exception. Examples of beliefs that do **not** qualify for a religious exception include:

- Arguments for free will or against compulsion.
  - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
  - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
  - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
  - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
  - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

The exception review panel is working through these requests now. However, each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness.

With the rigorous reviews, **it is unlikely that the committee will complete all the reviews by Saturday, Oct. 2**.

As you know, if you are not compliant with the policy by Oct. 18, you cannot work, study or volunteer at OHSU on Oct. 19. Monday, Oct. 4, is the last day that you could get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18.

If you believe your request may not be approved based on these criteria, we are here to help. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. Remember to enter your vaccination record as soon as possible in Enterprise Health, as well. It may also be helpful to check that your Enterprise Health record is up-to-date, since OHSU is using that to determine compliance.

If you have questions about the vaccines, email AskOHSU@ohsu.edu, and we can connect you with someone who can answer your questions. You're also encouraged to join an open Q&A forum this Friday, Oct. 1, at 11 a.m.

## The more the merrier: Occupational Health can provide your COVID-19 booster

Occupational Health continues to have ample capacity for giving COVID-19 booster doses to employees and students. Read this OHSU Now post for all the details about making an appointment in Enterprise Health. If you only need the flu vaccine, you are still welcome to walk in on Wednesdays.

Please let our OHSU pharmacy colleagues focus on their work prioritizing patient care.

## Reminder: Box-to-OneDrive automated content copy starts tomorrow

Here's what you need to know:

- Your Box files and folders will be copied by ITG through a series of automated syncs. This process is **entirely automated** and will happen behind the scenes, allowing you to continue working in Box without interruption.
- Your files will begin to appear in a **From_Box folder in OneDrive** starting tomorrow and continuing through Dec. 31, 2021. Read the Sept. 23 OHSU Now post.
- Please **do not use the files in the From_Box folder** in OneDrive until you are notified by ITG that the migration is complete.

Keep working on your files in Box, take a File Management in the Cloud training and start exploring and learning OneDrive. Read the Box Migration FAQs to learn more.

## Are you experiencing compassion fatigue?

In a letter to the Department of Psychiatry on July 30, 2021, George Keepers, M.D., professor and chair of psychiatry, OHSU School of Medicine, wrote, "…There's another surge gaining strength by the day in the country, a surge of anger at the people who have refused to be vaccinated, who have denied the tragedy of this pandemic … ignored scientific experts, ignored the pleas of overworked, despairing health care professionals…."

As Dr. Keepers explains, this anger is symptomatic of compassion fatigue, which can be a normal consequence of working in a helping field. Health care providers and those in professions based on service are particularly vulnerable to compassion fatigue – a reality made precipitously worse by the pandemic.

# EXHIBIT "C"



# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name: Nadezhda Babiy

Mailing Address: 29833 SE Lusted RD

City: Gresham State: OR Zip Code: 97080

Preferred Phone: 971-261-8183

Preferred Email: nadyababiy@yahoo.com Preferred Method of Contact: Email

Employee/Student ID #: 79316 Job Title: PAS Resource Specialist

Department: HC Centralized Managed Care & Price Estimate

## Part B:   Religious Exception Request

Name of Religion: Slavic Conservative Pentecostal

Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

I am writing this letter to request a religious exemption. I am pro life and my religious beliefs and my conscience prohibit me to participate or benefit from an abortion no matter how long ago the abortion occurred. I believe that innocent life is sacred to God, from conception, to birth, to natural death ( *Holy Bible* . King James Version, Jeremiah 1:5).

All of the covid vaccines available today have used abortion derived cell lines for research and development process. In order to procure the cells for cell lines, like the ones used in vaccine production, the fetus must be alive when the tissue is extracted. A biologist and vaccine researcher Pamala Ackers said: "They will actually deliver these babies via cesarean section. The babies are still alive when the researchers start extracting the tissue; to the point where their heart is still beating, and they're generally not given any anesthetic, because that would disrupt the cells that the researchers are trying to extract. So, they're removing this tissue, all the while the baby is alive and in extreme amounts of pain. So, this makes it even more sadistic. "  A dead organ can not be transplanted into a living body as a cell line can not be made without live tissue. Pfizer vaccine was tested using the abortion derived cell line HEK-293. Moderna was tested using the abortion derived cell line HEK-293. Johnson & Johnson used the abortion derived cell line  PER.C6. (The Lozier Institute Lists a number of COVID-19 Vaccines which utilize aborted fetal cells https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination



# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

Because human cells from abortion were used for testing, my conscience will not allow me to accept a vaccine that is unclean. My first moral obligation is to follow my conscience. My body is the temple of the Holy Spirit and I am to glorify God (1 Corinthians 6:19). As a believer I follow the word of God. "We ought to obey God rather than men" ( Acts 5:29). My conscience serves as my monitor and confirms my knowledge of right and wrong. "In that they show the work of the Law written in their hearts, their conscience bearing witness and their thoughts alternately accusing or else defending them" ( Romans 2:15).

Because of my faith I do not wish to participate in this grave sin and go against my conscience, therefore I cannot accept this vaccine. Due to my religious and conscientiously held beliefs I plea for an exemption. Thank you for your consideration.

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

I have not needed or declined any previous medical care, however Bible gives us the free will to choose based on our moral values what we accept & do to our bodies "You, my brothers and sisters, were called to be free" ( Galatians 5:13).

On a side note, my job/position is remote and I work from home. I do not put anyone around me at risk. I tested Positive for SARS-CoV-2 Antibodies via Venipuncture Blood Test. See attached, we know that we are well protected against Covid based on a recent study

https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional: Administrator

Title: Administrator

Represented Organization: Slavic Church Emmanuel

Street Address: 2025 SE 82nd Ave

City: Portland State: OR Zip Code: 97216

Telephone: 503-893-5481 Email: emmlive.com/contact/

How long have you had a relationship with the recognized religious professional?:

I have been a church member here since 2006



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

Naeleynder Bebjry
Signature

## Part C: OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

By signing this form, I acknowledge and affirm that:

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand that COVID-19 has caused a pandemic that continues to sicken and kill many people.
- I understand if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member:** Naeleynder Bebjry   **Date:** 9- 7 . 2021

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

# EXHIBIT "D"

OHSU**NOW**

Dear Nadia ,

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are **not approved for a religious exception**. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria established under the law to determine if your request met the legal definition of a religious or medical exception.

The vast majority of these denials were because the requestor did not meet the long-established legal requirements for any religious exception, but instead stated personal beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception. **OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member**. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their

# EXHIBIT "E"

<p style="color:red">**Exhibit 2**</p>

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Connie Seeley <now@ohsu.edu> |
| **Sent:** | Wednesday, September 22, 2021 6:40 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Sept. 22 update |



OHSUNOW

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ፦ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comúniquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*

Share your experiences with the **Covington Hotline**

## Today's highlights

- **Criteria for vaccine policy exceptions:** After a thoughtful and comprehensive review, OHSU shares its narrow criteria for medical and religious exceptions.

## Criteria for vaccine policy exceptions

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. State and federal officials have announced vaccination requirements for large employers across the country in large part to realize the community benefit.

To be compliant with OHSU's vaccination policy (and state law) by Oct. 18, you must either be fully vaccinated (14 days after your final vaccination dose) or have an approved medical or religious exception.

Exception requests were due in Enterprise Health on Monday, Sept. 20, and many of you have asked about the criteria for reviewing these.

1

Thank you for your patience as OHSU's leadership and Vaccine Exception Review Panel have thoughtfully considered the possible personal, community and legal implications. This deliberate review has led to developing very narrow criteria for approving medical or religious exceptions at OHSU. You can see the full guidance that the Vaccine Exception Review Panel will use on the COVID-19 O2 site's Vaccine page. However, we want to highlight a few of the key points for both types of exceptions.

We understand that some of you may not qualify for an exception based on thesecriteria. We are here to help. If you email AskOHSU@ohsu.edu, our team can connect you with someone to help answer your questions. We want you to be compliant and we value you. We also need to ensure OHSU sets policy to protect our patients and our community.

We plan to share a matrix of what non-compliance will look like by employee group very soon.

**Medical exceptions**
Medical exceptions will be allowed only for specific reasons consistent with guidance from the Centers for Disease Control and Prevention (CDC), including:

- Documented history of severe allergic reaction to one or more components of all three currently approved COVID-19 vaccines.
- Documented history of severe or immediate-type hypersensitivity allergic reaction to a COVID-19 vaccine, and separate contraindication to other available formulations.
- Individuals who have received monoclonal antibodies for the treatment or prophylaxis following exposure of COVID-19 for 90 days after administration.

Examples of conditions that would not qualify for a medical exception include:

- History of severe allergic reactions to foods, oral medications, latex, pets, insects and environmental triggers.
- Trypanophobia (fear of injections or needles).
- Previous history of normal vaccine side effects or general avoidance of vaccines.
- History of COVID-19 infection.
- Concerns that vaccination could exacerbate an autoimmune disorder.
- Routine requests because of pregnancy.

**Religious exceptions**
In accordance with relevant federal and Oregon law, members who can demonstrate a sincerely held religious belief and past behavior consistent with that belief will be approved for an exception. Please be advised that social, political or economic philosophies or personal preferences are not considered to be religious beliefs.

Examples of beliefs or past behavior that may disqualify an individual from receiving a religious exception include:

- Receiving another vaccine in the last five years.
- An objection to the vaccine on the basis of fetal cell concerns.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.

- o  While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- o  Given the gravity of the pandemic and lack of alternative vaccines, both the Vatican and the U.S. Conference of Catholic Bishops have endorsed the use of the Pfizer/BioNTech and Moderna vaccines, despite their remote connection to fetal tissues.  The president of the National Association of Evangelicals, and leadership of the Orthodox (Jewish) Union issued a joint statement encouraging their members to be vaccinated.

**Accommodations with an approved exception**

If your exception is approved using this guidance, OHSU still must keep you, your colleagues and our patients safe. How we will achieve this will likely evolve as we learn more about how to best prevent the spread of COVID-19.

OHSU will endeavor to find accommodation for exempt, but unvaccinated employees that do not involve direct, in-person patient contact. In the event that an accommodation that maintains the safety of our patients and employees cannot be found, an employee may be placed on unpaid leave. As the situation evolves, OHSU will periodically assess whether and under what circumstances these employees might once again participate in patient care.

Similarly, because of the current national public health emergency resulting from the COVID-19 pandemic, OHSU will not place unvaccinated students in direct, in-person, patient contact for the foreseeable future. OHSU programs will endeavor to find reasonable accommodations for unvaccinated students who have received approved exceptions to try and support their degree progression while they are unable to engage in direct, in-person, patient contact. As the situation evolves, OHSU will periodically assess when and under what circumstances these students might once again participate in patient care activities.

If you have an approved exception, and work in an OHSU building, you currently will need to:

- •  Wear an approved and fit-tested respirator or the N95 or equivalent at all times, except when actively eating/drinking, in accordance with OHA requirements.
- •  Maintain physical distancing from others when indoors in a clinical area.
- •  Maintain at least 6-feet distance when actively eating/drinking and mask is removed.
- •  Wear a mask outdoors when 6-feet distance from others cannot be maintained.
- •  Get tested at least twice weekly.

**You can still get vaccinated**

If you still need your vaccination, you can get one, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. To be compliant with the policy by Oct. 18, you will need to receive the Johnson & Johnson vaccine by Oct. 4. Remember to enter your vaccination record in Enterprise Health as well.

# The latest data

# EXHIBIT "F"



CHRISTINA E. STEPHENSON
Labor Commissioner

August 14, 2023


NADEZHDA BABIY
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:   Complainant:   Nadezhda Babiy
      Respondent:    Oregon Health & Science University Dba Ohsu
      Case #:        EEEMRG220812-11542
      EEOC #:        38D-2023-00116

The Civil Rights Division has concluded the investigation and review of the above-cited case and has determined that there is substantial evidence to support the allegations of discrimination.

The complaint was dually filed under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), or the Americans with Disabilities Act (ADA), which are enforced by the U.S. Equal Employment Opportunity Commission (EEOC).

The Division may refer this matter to the Administrative Prosecution Unit for contested case hearing consideration and may facilitate an attempt to reach a reasonable settlement of this matter. Please see the enclosure with information on the conciliation process; however, no action is required from you at this time.

Complainant has the right to withdraw this case at any time. Please see ORS 659A.875 regarding the time limitations that apply to any right the Complainant may have to file a civil action in circuit court.

NOTE: Pursuant to ORS 192.501(8), the Bureau cannot release a copy of the file until it is closed.  The above case is not yet closed.  Please take note of any enclosures sent with this letter.


Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit


Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

   

## INFORMATION FOR COMPLAINANTS RECEIVING A DETERMINATION OF SUBSTANTIAL EVIDENCE OF AN UNLAWFUL PRACTICE OR UNLAWFUL EMPLOYMENT PRACTICE

**The Conciliation Process**

The investigation of this case has resulted in a determination of substantial evidence that an unlawful practice or unlawful employment practice occurred. The division may facilitate settlement negotiations between the Complainant and the Respondent, refer the matter directly to a contested case hearing, or administratively close the case

The Complainant and Respondent have the right to decline to enter into settlement negotiation or to reject any settlement offer made. However, if Complainant declines or otherwise fails to participate in the conciliation process, or rejects a settlement offer made by Respondent that the division considers to provide full remedy, the case may be administratively closed.

*Complainant has the right to withdraw the complaint from the division at any time and pursue the matter by filing a civil action in circuit court, subject to statutory deadlines set forth in ORS 659A.875.*

BOLI-facilitated **conciliation agreements** are voluntary, no-fault settlements. Conciliation agreements may provide for remedies to a complainant including but not limited to monetary payment for lost wages and pain and suffering, as well as employment or reinstatement of employment.

If Complainant and Respondent agree to settle the case, the division prepares a **conciliation agreement** for Complainant, Respondent and the division to sign. When the **conciliation agreement** is signed by all parties, the case is closed. If Complainant settles the case, Complainant does not have the right to file a civil suit in court on the same issues.

**Complainant's Options if Conciliation Fails**

1.   If conciliation fails, a division supervisor reviews the case to determine whether it is appropriate for a contested case hearing in BOLI's Administrative Prosecution Unit. If it is not, the division will inform Complainant and close the file. If a notice of Complainant's right to file a civil action in circuit court has not previously been issued, it will be issued at the time of case closure.

2.   If the division determines the case is appropriate for a contested case hearing, it is forwarded to the Administrative Prosecution Unit, where an administrative prosecutor reviews the case to determine if it is likely to prevail in a hearing. If the prosecutor finds it is not likely to prevail in a hearing, the prosecutor will so inform Complainant and close the file. If a notice of Complainant's right to file a civil action in circuit court has not previously been issued, it will be issued at the time of case closure.

3.   If the administrative prosecutor determines that the case is likely to prevail in a hearing, the prosecutor will so inform Complainant and will serve "specific charges" on Respondent. The prosecutor will represent the case in a contested case hearing. Complainants do not need an attorney to participate in a contested case hearing.

If wishing to consult with an attorney, you may contact the Oregon State Bar's Lawyer Referral Service at 503-684-3763 (Portland) or 800-452-7636. The Bureau is not permitted to make referrals to attorneys.



August 14, 2023

NADEZHDA BABIY
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:  Nadezhda Babiy
        Respondent:  Oregon Health & Science University Dba Ohsu
        Case #:      EEEMRG220812-11542
        EEOC #:     38D-2023-00116

### NOTICE OF RIGHT TO FILE A CIVIL SUIT

This is your 90-day notice letter. Pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

The Bureau may determine at a future date to terminate proceedings without initiating a contested case hearing. You have the choice at this time of pursuing the complaint in state circuit court or continuing with the Bureau's process. The Bureau requests that you notify the Division if this complaint is taken to court.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: August 14, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney
       Oregon Health & Science University Dba Ohsu, Respondent
       Emily Q Shults, Respondent's Attorney
       Laura J Stadum, Respondent Headquarter Contact
       Alice Cuprill-Comas, Authorized Representative/Agent

  

## Civil Rights Division - Bureau of Labor and Industries
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

Complainant:  Nadezhda Babiy

Respondent:  Oregon Health & Science University Dba Ohsu

Case Number: EEEMRG220812-11542

Investigator:  Theodore Wenk

Filing Date:  August 12, 2022

Reviewed By: /s Michael Mohr

## I.    Jurisdiction

Oregon Revised Statutes chapters 659A, ORS 25.337, 25.424, 171.120, 345.240, 441.184, 476.576, 651.060, 651.120, 652.355, 653.060 and 654.062, and Oregon Administrative Rules chapter 839 divisions 2, 3, 4, 5, 6, 9 and 10 authorize the Civil Rights Division to accept, investigate, amend, resolve and determine complaints alleging unlawful practices in employment, housing, places of public accommodation, state government and career, professional and trade schools.

Specific facts supporting a conclusion that the Division has jurisdiction over Respondent(s) are found below.

## II.    Synopsis

The Bureau of Labor and Industries, Civil Rights Division, finds substantial evidence of an unlawful practice based on religion in that Respondent violated ORS 659A.030 in terminating Complainant's employment without effectively offering her opportunity for an accommodation of her religious beliefs and for failing to provide accommodation.

## III.    Claim and Answer

On August 10, 2022, Complainant filed a complaint with the Civil Rights Division alleging an unlawful employment practice based on religion in that Respondent terminated her employment after denying her request for religious based exemption from Covid-19 vaccination.  Complainant alleges that her position as a telework patient administrative services assistant was entirely remote and thereby her request posed no risk to Respondent.  Complainant further argues that as she had previously had Covid-19 and her resulting antibody was high and thereby posed no more risk of infection than a vaccinated individual.  Complainant alleges this constitutes a violation of ORS 659A.030.

Respondent answers Complainant allegations providing that Complainant's request did not formally establish a religious basis for her request.  Respondent maintains that her request was primarily based upon stem cell origination which is a personal belief in that

**Civil Rights Division - Bureau of Labor and Industries**
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

no fetal stem cells are contained in the vaccine and that the research she appears to reference regarding HEK-293 cell lines was used in testing many common over the counter medications. Respondent does not deny Complainant's position was fully remote, but notes that they could ask for her to be on site at any point. Respondent also asserts that Complainant's request would present undue hardship regardless of their assessment of her religious request.

### IV.    Identity of Respondent(s)

1. Respondent Oregon Health & Science University is a public body and is a person pursuant to ORS 659A.001(9).

### V.    Findings of Fact

1. Respondent employs one or more persons in the State of Oregon and is an employer pursuant to ORS 659A.001(4)(a).

2. At all times material to this complaint, Respondent employed more than 15 employees in addition to Complainant and is a covered employer under ORS 659A.030.

3. Complainant worked for Respondent as a CMC PAS-R IV/PEB from approximately November 2017 to December 2021.

4. Complainant provided their verified complaint as evidence in support of their allegations,

5. Respondent submitted a written position statement in answer to this complaint.

6. Respondent offered the following documentation in support of Respondent's defense(s):

   - Position Description
   - Religious Accommodation Process FAQ
   - Complainant Accommodation Request (9/7/21)
   - Email Communication about Request Form
   - Respondent policy No. 03-30-150 Covid-19 Immunizations and Education (effective 10/18/21)

7. On July 31, 2023, BOLI requested that Respondent provide the telework agreement referenced in their Position Statement.

8. On August 8, 2023, Respondent provided the telework agreement.

## Civil Rights Division - Bureau of Labor and Industries
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

### VI.    Summary

EEOC guidance provides that religious accommodation requests be assessed case by case. Complainant provided an accommodation request that set forth her religious beliefs pertaining to the Covid-19 vaccine. Respondent did not request any additional information, nor give her any opportunity to provide any additional information but instead denied Complainant's request after 24 days of review and provided Complainant with no appeal. Complainant attempted to appeal and provide additional information 10 days after the denial, before her termination date. Respondent gave no apparent response to her appeal request.

EEOC guidance provides:

- Employers should individually assess each request and avoid assumptions or stereotypes about what constitutes a religious belief or practice or what type of accommodation is appropriate.

- Employers and employees should confer fully and promptly to the extent needed to share any necessary information about the employee's religious needs and the available accommodation options.

(https://www.eeoc.gov/laws/guidance/best-practices-eradicating-religious-discrimination-workplace)

In the present matter, Respondent made no effort to confer with the Complainant regarding questions they may have had pertaining to her request. Respondent did not consider additional statement made by Complainant regarding consistent behavior with the beliefs she described.

Respondent further argues that accommodating Complainant would have presented an undue hardship. Respondent acknowledges that Complainant was a telework employee. Respondent argues that "there were times where department staff was asked to report to the office within 2 hours if they had a power outage internet outage, or equipment failure". Respondent did not provide evidence that Complainant had been on-site since her hiring. Complainant states that the only instances she was on site were her hiring date and notably the date she returned her equipment upon layoff. Respondent gives no example of how or when Complainant would have contact with patients, or medical staff nor that she was unwilling to wear a mask and be tested if she were to be on site. Respondent's requirement that Complainant return equipment to their site appears inconsistent. Complainant credibly states that she had not ever in the course of her work had contact with patients or with direct health care providers.

Respondent in their Position Statement states the Oregon Healthcare Authority had mandated Covid-19 vaccination for healthcare providers and healthcare staff stating:

**Civil Rights Division - Bureau of Labor and Industries**
## NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

Healthcare providers and staff was broadly defined and included "unlicensed caregivers, and any clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, student and volunteer personnel." Or. Admin. R. 333-019-1010.

The applicable Oregon Administrative Rule then in effect (OAR 333-019-1010) states more specifically than asserted by Respondent:

"Healthcare providers and healthcare staff" means individuals, paid and unpaid working, learning, studying, assisting, observing or volunteering in a healthcare setting *providing direct patient or resident care or who have the potential for direct or indirect exposure to patients, residents, or infectious materials*, and includes but is not limited to any individual licensed by a health regulatory board as that is defined in ORS 676.160, unlicensed caregivers, and any clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, student and volunteer personnel. (Italics added)

Complainant pertinently notes that her work site, even if there were an outage or equipment failure, was not upon Respondent's medical campus. Her telework site is noted in the Telework Agreement as her residence. Her Position Description notes her Respondent site location as the Market Square Building aka 1515 SW 5th Ave. downtown Portland. Respondent's website notes this location as 'Administration' as distinct from 'Patient buildings'.

The United States Supreme Court, in *Gerald E. Groff v. Louis DeJoy, Postmaster General Hardison*, 600 U.S. ____ (2023), defined "undue" and "hardship" as defined in Webster's Third, Random House and American Heritage Dictionaries (e.g., an inappropriate privation). The Court further delineates, "that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, "size and operating cost of [an] employer." (Groff p. 18). While the volume of requests made presented organizational hardships to Respondent, it is not apparent from the evidence submitted that it would have presented an undue hardship to give Complainant additional opportunity to supplement her request given the overall context of Respondent's hardship defenses raised.

## VII.    Determination(s)

The Bureau of Labor and Industries, Civil Rights Division, finds SUBSTANTIAL EVIDENCE OF AN UNLAWFUL EMPLOYMENT PRACTICE denial of religious accommodation and employment termination in violation of ORS 659A.030.

_____/S/_____

Theodore E. Wenk
CRD Field Operations Manager

«CASENUMBER»



**CHRISTINA E. STEPHENSON**
Commissioner of the
Bureau of Labor and Industries

August 14, 2023

NADEZHDA BABIY
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:   Complainant: Nadezhda Babiy
      Respondent: Oregon Health & Science University Dba Ohsu
      Case #:      EEEMRG220812-11542

## IMPORTANT NOTICE REGARDING YOUR CASE

Dear Complainant,

This letter is to inform you about the status of your complaint with the Administrative Prosecution Unit, the unit within BOLI that prosecutes cases for the Civil Rights and Wage and Hour Divisions.  **Please note that though we have found substantial evidence of discrimination in your case, we have NOT yet determined whether we will prosecute your case.**

There are a few possibilities for what will happen with your case now.  In any of the scenarios described below, <u>if you wish to file a civil suit in court you must do so within the 90-day timeline described in the enclosed notice</u>.  This will be your only chance to file a civil suit in court, and if you miss the 90-day deadline, you will lose your right to file.

**Scenario 1**: BOLI will take no further action in your case, and you must file in court within 90 days, as described in the enclosed notice, if you wish to continue pursuing your claims.

**Scenario 2**: BOLI will attempt to resolve your case through conciliation.  Conciliation is an attempt to resolve your case informally, without further legal action or administrative prosecution.  However, engaging in conciliation does NOT stop any time limitations from running.  If you want to file a civil suit, you must do so within the 90-day timeline described in the enclosed notice, *even if* you are engaging in conciliation.  Please note that both parties – the complainant and the respondent – must agree to engage in conciliation.  If both parties agree, the prosecutor will relay settlement offers between the parties and draw up settlement paperwork if the parties can agree to the terms of the settlement.   The Agency resolves between 30% and 40% of cases like yours through conciliation.

 Portland · Salem · Eugene       **oregon.gov/boli**
Help@boli.oregon.gov       (971) 245-3844
**Ore. Relay TTY: 711**

**Scenario 3**: If conciliation is unsuccessful or if either of the parties does not agree to engage in conciliation, a different Administrative Prosecutor will be assigned to your case to review your file and decide whether to prosecute your case. The review period does not stop the 90-day timeline from running. It is important to understand that the Administrative Prosecution Unit takes less than 10% of referred cases to a hearing. Frequently, the decision by APU about whether to prosecute your case is made AFTER the 90 days has run, meaning if you wait for the APU decision, you will likely lose your right to file a lawsuit. If you want to file a civil suit, you must do so within the 90-day timeline described in the enclosed notice, *even if* you are waiting for APU's decision.

We cannot tell you at this point which option your case falls into. Again, if you would like to file a civil suit alleging the same matters that are the basis of your complaint, you **must** file in court within the 90-day timeline described in the enclosed notice.

If you have filed in court, we are required to close your BOLI complaint. Please notify us if you have done so by email at rachel.diamond-cuneo@boli.oregon.gov, by phone at 971-358-3905 or by mail at Administrative Prosecution Unit, 800 NE Oregon St., Suite 1045, Portland, Oregon 97232.

To request a copy of your file, you can go online to www.oregon.gov/boli/publicrecords and fill in the online form or contact public.records@boli.oregon.gov.

Please be aware that we cannot provide you with legal advice. If you would like legal advice regarding case deadlines, statutes of limitations, or otherwise, you can search online for an employment attorney, or you may call the Oregon State Bar Attorney Referral Service at 503-684-3763 or 1-800-452-7636 to contact an attorney. If you are considering filing a complaint in court, you have only 90 days to find an attorney and have them file a complaint for you.

Thank you for your attention to this matter. Please do not hesitate to contact us if you have any questions by email at rachel.diamond-cuneo@boli.oregon.gov, by phone at 971-358-3905.


Enclosure: Civil Suit Notice

cc:     Ray D Hacke, Complainant's Attorney

# EXHIBIT "G"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days      Add Days      Workdays      Add Workdays      Weekday      Week №

From **Monday, August 14, 2023**
Added 90 days

## Result: Sunday, November 12, 2023

### Calendar showing period from August 14, 2023 to November 12, 2023

| August 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 17 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| September 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| October 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| November 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 12 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

☐ = Start date (Aug 14, 2023)      ☐ = Final result date (Nov 12, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.