IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NADEZHDA BABIY, an individual,

             Plaintiff,

      v.

OREGON HEALTH AND SCIENCE
UNIVERSITY, a public corporation
and governmental entity; and DOES 1-50,

             Defendant(s).

No. 3:23-cv-01562-HZ

OPINION & ORDER

Ray D. Hacke
Pacific Justice Institute
317 Court Street N.E.
Suite 202
Salem, OR 97301

        Attorneys for Plaintiff

Thomas R. Johnson
Brenda K. Baumgart
Rachelle Collins
Stoel Rives LLP
760 S.W. Ninth Ave.
Suite 3000
Portland, OR 97205

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

This matter is before the Court on Defendants' Motion to Dismiss Second Claim of First Amended Complaint, ECF 11. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion.

## BACKGROUND

The following facts are taken from the First Amended Complaint ("FAC") and its attachments.

Plaintiff Nadezhda Babiy was employed by Defendant Oregon Health Sciences University ("OHSU") from June 2015 through December 2, 2021, as a patient access specialist.

"OHSU is Oregon's only public medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals. OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions." FAC, ECF 10, ¶ 12.

On August 13, 2021, the Oregon governor issued Executive Order 21-29 ("the EO"), which stated that a surge in COVID-19 infections was "imperiling the state health system's ability to manage not just COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies" and "employer vaccination requirements have become an important tool" to manage the surge. *Trusov v. Oregon Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023). The EO required state executive-branch employees to be "fully vaccinated" against COVID-19 "by the later of October 18, 2021, or six weeks after the date that the Food and Drug Administration (FDA) approve[d] a COVID-19 vaccine." *Id.* The EO allowed exceptions to the vaccine

requirement for individuals who could not be vaccinated because of disability, a qualifying

medical condition, or a sincerely held religious belief. *Id.*

On August 23, 2021, the FDA approved the COVID-19 vaccine. The Oregon Health

Authority ("OHA") adopted vaccination rules similar to those in the EO, including Oregon

Administrative Rule 333-019-1010, known as the "Healthcare Order," which was initially

adopted on August 25, 2021, and modified on September 1, 2021. *Id.* It explained, "COVID-19

variants are running through the state's unvaccinated population and causing an increase in

breakthrough cases for those who are fully vaccinated. This rule is necessary to help control

COVID-19, protect patients, and to protect the state's healthcare workforce." OAR 333-019-

1010(1).[1] Based on these concerns, the Healthcare Order mandated that after October 18, 2021,

"[h]ealth care providers and healthcare staff may not work, learn, study, assist, observe, or

volunteer in a healthcare setting unless they are fully vaccinated or have provided documentation

of a medical or religious exception." OAR 333-019-1010(3)(a).

At some point after August 25, 2021, "[i]n accordance with the Vaccine Mandate, OHSU

required its employees to either be vaccinated against COVID-19 or be granted a religious or

medical exception by October 18, 2021." FAC ¶ 17. To process the expected volume of requests

for exemption OHSU assembled the Vaccine Exception Review Panel[2] ("VERC") composed of

"representatives from [OHSU's] AAEO, Center for Diversity and Inclusion, Human Resources,

Legal, Occupational Health and Student Health and Wellness." FAC, Ex. B at 2; Ex. E at 2.

---

[1] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective November 6, 2023.
[2] Exhibit E to the FAC identifies this as the Vaccine Exception Review Panel. Plaintiff, however refers to it as the Vaccine Exemption Review Committee in the FAC and Defendants refer to it as the Vaccine Exception Review Committee in their Motion to Dismiss. Both parties use the acronym VERC to refer to the committee. The Court, therefore, uses the VERC acronym in this Opinion and Order.

On September 7, 2021, Plaintiff submitted a Religious Exception Request Form in which she asserted that "receiving the COVID-19 vaccination conflict[ed] with [her] religious observances, practices, or beliefs." FAC, Ex. C at 1. Plaintiff stated:

> I am pro life and my religious beliefs and my conscience prohibit me to participate or benefit from an abortion no matter how long ago the abortion occurred. I believe that innocent life is sacred to God, from conception, to birth, to natural death (Holy Bible, King James Version, Jeremiah 1:5).
>
> All of the covid vaccines available today have used abortion derived cell lines for research and development process. In order to procure the cells for cell lines, like the ones used in vaccine production, the fetus must be alive when the tissue is extracted. [quotes "biologist and vaccine researcher Pamala Ackers] A dead organ can not be transplanted into a living body as a cell line can not be made without live tissue. Pfizer vaccine was tested using the abortion derived cell line HEK-293. Moderna was testing using the abortion derived cell line HEK-293. Johnson & Johnson used the abortion cell line PER.C6.
>
> Because human cells from abortion were used for testing, my conscience will not allow me to accept a vaccine that is unclean. My first moral obligation is to follow my conscience. My body is the temple of the Holy Spirit and I am to glorify God (1 Corinthians 6:19). As a believer I follow the word of God. "We out to obey God rather than men" (Acts 5:29). My conscience serves as my monitor and confirms my knowledge of right and wrong. "In that they show the work of the Law written in their hearts, their conscience bearing witness and their thoughts alternately accusing or else defending them" (Romans 2:15).
>
> Because of my faith I do not wish to participate in this grave sin and go against my conscience, therefore I cannot accept this vaccine. Due to my religious and conscientiously held beliefs I plea for an exemption.

*Id.* at 2-3. Plaintiff also noted that she has "not needed or declined any previous medical care, **however Bible gives us the free will to choose based on our moral values what we accept & do to our bodies** "You, my brothers and sisters, were called to be free" (Galatians 5:13). *Id.* at 3 (emphasis in original).

On September 22, 2021, OHSU sent an email to staff explaining that the VERC had developed "very narrow criteria for approving medical or religious exemptions at OHSU" and referring employees to a link providing the "full guidance that the [VERC] will use."[3] FAC, Ex. E at 2. The email "highlight[ed] a few of the key points for both types of exceptions" and listed "examples of beliefs or past behavior that may disqualify an individual from receiving a religious exemption":

- Receiving another vaccine in the last five years.
- An objection to the vaccine on the basis of fetal cell concerns.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
  - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
  - Given the gravity of the pandemic and lack of alternative vaccines, both the Vatican and the U.S. Conference of Catholic Bishops have endorsed the use of the Pfizer/BioNTech and Moderna vaccines, despite their remote connection to fetal tissues. The president of the National Association of Evangelicals, and leadership of the Orthodox (Jewish) Union issued a joint statement encouraging their members to be vaccinated.

*Id.* at 3.

On September 30, 2021, OHSU sent an email to staff further addressing the "narrow exceptions" to the vaccine mandate and noting the criteria for approving exceptions was narrow because "OHSU has a responsibility to our members, our patients and our community to keep everyone as safe as possible. Vaccination against COVID-19 is an important tool in creating this safe environment." FAC, Ex. B at 2. The email also stated the VERC expected "that very few of the submitted requests for religious exceptions will be approved . . . in part because social,

---

[3] The parties did not submit the contents of the linked material to the Court.

political or economic philosophies or personal preferences are not considered to be religious

beliefs, and will not qualify a member for a religious exception." *Id.* The email listed "examples

of beliefs that do not qualify for a religious exception" including:

- Arguments for free will or against compulsion.
    - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
    - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
    - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
    - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
    - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
    - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

*Id.*

At some point before October 19, 2021, OHSU denied Plaintiff's request for a vaccine

exemption. FAC, Ex. D. Plaintiff was advised that her request had received two independent

assessments by members of the VERC and the decision made "using specific criteria under the

law to determine if [her] request met the legal definition of a religious . . . exception." *Id.* OHSU

reiterated the examples of "beliefs that did not qualify for a religious exception" set out in the

September 30, 2021, email. Plaintiff did not receive a COVID-19 vaccination and OHSU placed

her on unpaid leave on October 19, 2021.

On November 5, 2021, the United States Secretary of Health and Human Services ("the Secretary") issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a requirement that facilities ensure that their covered staff were vaccinated against COVID-19. Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555, 61616-27 (Nov. 5, 2021). The rule provided that it applied to "[f]acility employees; licensed practitioners; students, trainees, and volunteers; and individuals who provide care, treatment, or other services for the facility and/or its patients" and noted the vaccine requirements were "not limited to those staff who perform their duties within a formal clinical setting . . . there may be staff that primarily provide services remotely via telework that occasionally encounter fellow staff, such as in an administrative office or at an off-site staff meeting, who will themselves enter a health care facility or site of care for their job responsibilities." *Id.* at 61570. Accordingly, the Secretary noted "it [was] necessary to require vaccination for all staff that interact with other staff, patients, residents, clients, or PACE program participants in any location, beyond those that physically enter facilities, clinics, homes, or other sites of care." *Id.* The rule also required providers to offer medical and religious exemptions. *Id*. at 61571-72. A facility's failure to comply with the vaccination requirement could lead to monetary penalties, denial of payment for new admissions, and termination of participation in the Medicare and Medicaid programs. *Id*. at 61574.[4]

On December 2, 2021, OHSU terminated Plaintiff's employment.

On October 25, 2023, Plaintiff filed a Complaint in this Court against OHSU and "DOES 1 through 50," identified as individuals "legally responsible for the events and happenings" in

---

[4] On June 5, 2023 the Secretary issued a new rule withdrawing the vaccination requirement. 88 Fed. Reg. 36485, 36488 (June 5, 2023)(effective Aug. 4, 2023).

the Complaint and including "members of the VERC who made the decision to deny Plaintiff a religious exemption." Compl., ECF 1, ¶ 5. Plaintiff asserted claims against OHSU for failure to accommodate and religious discrimination in violation of Title VII, 42 U.S.C. § 2000e, and a claim against DOES 1 through 50 for violation of Plaintiff's First Amendment right to freedom of religion.

On February 2, 2024, before Defendants responded to the Complaint, Plaintiff filed a First Amended Complaint against OHSU and DOES 1 through 50 asserting a claim against OHSU for failure to accommodate in violation of Title VII, 42 U.S.C. § 2000e, and a claim against the Doe Defendants for violation of Plaintiff's First Amendment right to freedom of religion. Plaintiff seeks damages and unspecified declaratory and injunctive relief.[5]

On February 5, 2024, Defendants filed a Motion to Dismiss Second Claim of First Amended Complaint in which they move to dismiss Plaintiff's first-amendment claim on the basis of qualified immunity. Plaintiff did not file a response and the Court took the motion under advisement on March 4, 2024.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

---

[5] The FAC states in the Prayer for Relief that Plaintiff seeks "declaratory and injunctive relief against the members of VERC, as stated *supra*." FAC at 12. The FAC, however, does not set out any declaration or injunction sought by Plaintiff, it is, therefore, unclear what, if any, declaratory or injunctive relief Plaintiff seeks.

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id. at 679*.

On a motion to dismiss, the court "may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)(citations omitted).

## DISCUSSION

Plaintiff brings her first-amendment claim against the Doe Defendants asserting they "expressed overt hostility toward the religious beliefs of certain OHSU employees, including and especially Plaintiff, by categorically excluding them from receiving religious exceptions based on what their specific beliefs were" and "effectively penalized Plaintiff for adhering to her sincere, religiously-based objection to receiving a COVID-19 vaccine by threatening to fire, and then firing" her. FAC ¶¶ 60, 62.

Defendants move to dismiss Plaintiff's first-amendment claim on the basis of qualified immunity.[6]

## I.        Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages," *Wood v. Moss*, 572 U.S. 744, 745 (2014), it is not an immunity from declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993); *accord Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010).

The Supreme Court has outlined a two-step process for determining the applicability of the qualified immunity doctrine. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id.* at 227. The second step is to determine "whether the right was clearly established." *Id.* Courts have discretion to assess either prong of the qualified immunity test first. *Id.* at 236.

"'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Johnson v. Kotek*, No. 22-35624, 2024 WL 747022, at *3 (9th Cir. Feb. 23, 2024)(quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)(citation omitted)). The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)(citations and internal quotation marks omitted). This is a heavy burden. Conduct violates clearly established law only when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S.

---

[6] A defendant may assert qualified immunity in a motion to dismiss under Rule 12(b)(6) when the court "can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)(quotation omitted).

731, 735 (2011). "For a constitutional right to be clearly established, 'existing precedent must have placed the . . . constitutional question *beyond debate*.'" *Johnson*, 2024 WL 747022, at *3 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)(emphasis in *Johnson*)). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)(citation omitted)

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City and Cty. of S.F. v. Sheehan*, 575 U.S. 600, 611–12 (2015). S*ee also Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018)(same). To determine whether a right was clearly established, the Court first looks to binding precedent of the Supreme Court and Ninth Circuit, and, if none exists, then to "whatever decisional law is available . . . including decisions of state courts, other circuits, and district courts." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019)(same). The precedent must be "'controlling' - from the Ninth Circuit or the Supreme Court - or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)(quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

**II.    Analysis**

Several similar cases filed in this district against OHSU and VERC members have framed the relevant qualified-immunity question as

> whether it was clearly established under the Free Exercise Clause
> that, during a pandemic, the VERC Defendants were barred from
> (1) attempting to distinguish between religious and secular objections to a
> vaccine and (2) in that effort, denying exemptions to a state-mandated
> vaccine mandate to healthcare workers who expressed ostensibly religious
> objections to the use of fetal cells in the development of the vaccine.

*Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM, 2024 WL 326598, at *5 (D. Or. Jan. 29, 2024). *See also Hancock v. Oregon Health & Sci. Univ.*, No. 3:22-CV-01254-

AN, 2024 WL 493715, at *5 (D. Or. Feb. 8, 2024)("the question is whether" at "the time that plaintiff's religious exception was denied . . . clearly established law existed . . . affirming that an employer's inquiry and assessment of the sincerity of an employee's religious beliefs in relation to a religious exception for a vaccine mandate violates that employee's free exercise of religion"); *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-cv-01942-IM, 2023 WL 5529959, at *10 (D. Or. Aug. 28, 2023)(similar question). This Court agrees with the analysis of these cases and adopts the relevant qualified-immunity question as set out in *Jimenez-Mendez*.

       In each case in this district evaluating OHSU and VERC's qualified immunity judges found that despite citing numerous cases, the plaintiffs provided no authority from "any court, let alone the Supreme Court or the Ninth Circuit, sufficient to show that any of the . . . Doe Defendants would have had fair warning that their conduct . . . was unconstitutional." *Trusov v. Oregon Health & Sci. Univ*., No. 3:23-CV-77-SI, 2023 WL 6147251, at *9 (D. Or. Sept. 20, 2023). *See Jimenez-Mendez*, 2024 WL 326598, at *5 ("Plaintiffs cite fourteen cases, but none could have given notice to a reasonable person in the VERC Defendants' position that she was violating Plaintiffs' clearly established constitutional right to the free exercise of religion."); *MacDonald*, 2023 WL 5529959, at *11 ("Plaintiff cites to no case law that would have put Defendants on notice that denying an exemption based on concerns about fetal cells used in the creation and manufacturing of the vaccine, without more, would run afoul of Plaintiff's First Amendment right to free exercise."); *Hancock*, 2024 WL 493715, at *6 ("plaintiff has provided no precedent implying that clearly established law prohibited employers from inquiring into the sincerity of an employee's beliefs in the context of a vaccine mandate during a global pandemic").

Plaintiff here did not file a response to Defendants' Motion to Dismiss and, therefore, provided no authority establishing that existing precedent placed the constitutional question here beyond debate. As United States District Judge Karin Immergut noted in *MacDonald*, "government actors may still be on notice that their conduct violates established law in novel factual circumstances in obvious or egregious cases." 2023 WL 5529959, at *11 (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001)). Judge Immergut concluded that *MacDonald* was "not such an obvious or egregious case where, notwithstanding the lack of judicial guidance, the Board and VERC Defendants' conduct was so clearly violative of a constitutional right that they should have known their actions were unconstitutional." *Id*. This case is also not one in which the Doe Defendants' conduct was so clearly violative of a constitutional right that they should have known their actions were unconstitutional.

The Court, therefore, concludes Plaintiff has failed to prove that it was clearly established at the relevant time that the Doe Defendants were barred from (1) attempting to distinguish between religious and secular objections to a vaccine or (2) in that effort, denying exemptions to a state-mandated vaccine mandate to employees who expressed ostensibly religious objections to the use of fetal cells in the development of the vaccine. Accordingly, the Court grants Defendants' Motion and dismisses Plaintiff's second claim under the doctrine of qualified immunity to the extent that Plaintiff seeks damages. The Court, however, denies Defendants' Motion to the extent that Plaintiff seeks declaratory or injunctive relief under her first-amendment claim.

**CONCLUSION**

The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss Second

Claim of First Amended Complaint, ECF 11, and dismisses Plaintiff's second claim as to

Plaintiff's request for damages without leave to amend.

IT IS SO ORDERED.


DATED:_____April 22, 2024_____.



MARCO A. HERNÁNDEZ
United States District Judge